**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL FIELDS, # K-52492,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12-cv-1170-GPM** |
| | ) | |
| **NATHANIEL MAUE, JASON VASQUEZ,** | ) | |
| **JEFF MOTT, SERGEANT RESTOFF,** | ) | |
| **OFFICER ROY, OFFICER PHELP,** | ) | |
| **LORI OAKLEY,** | ) | |
| **MICHAEL P. ATCHISON,** | ) | |
| **SALVADOR GODINEZ, R. NIEPERT,** | ) | |
| **and K. MORRIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is serving a 40 year sentence for murder.  Plaintiff claims that Defendants have retaliated against him, imposed punishment on him based on a false disciplinary report, denied him access to the courts, withheld his books, and subjected him to cruel and unusual punishment by denying him food and housing him in conditions that aggravated his illnesses.

More specifically, Plaintiff claims that Defendant Maue began "retaliating" against him on approximately January 27, 2012, by asking him about an alleged incident involving Plaintiff and Defendant Morris four years earlier (Doc. 1, p. 5).  A few days later, Defendant Maue pulled Plaintiff out of the food line for no reason and sent him back to his cell.  This was observed by Defendants Vasquez and Mott; Vasquez then put Plaintiff on "deadlock" (confinement to cell)

and told him he would be sent to segregation (Doc. 1, p. 6).  Defendant Maue wrote a false inmate disciplinary report ("IDR"), accusing Plaintiff of refusing to show his I.D.  Plaintiff submitted an emergency grievance over this IDR to Defendant Atchison (the warden).

While Plaintiff was on deadlock from January 31 to February 5, 2012, he did not receive a single food tray on first or second shift, with the exception of one lunch tray on February 5, 2012 (Doc. 1, p. 8).  Plaintiff spoke by telephone to his parents on February 6, 2012, and requested that they call the warden about the denial of food.  Plaintiff also informed Defendant Restoff that he was not being fed, to which he responded, "Tough. What do you want me to do about it?" as he walked away.

The IDR issued by Defendant Maue was heard on February 9, and Plaintiff was found guilty (Doc. 1, p. 9).  He was punished with segregation.  Plaintiff filed another emergency grievance with Defendant Atchison, which was not addressed within the proper time frame.  However, after Plaintiff's mother mailed in another copy of this grievance, Plaintiff spoke personally with Defendant Atchison about his complaints (Doc. 1, p. 10).  Plaintiff sent another grievance to Defendant Oakley on March 15, 2012, to follow up on these issues, but was informed by her that it was not timely filed.

On March 22, 2012, while Plaintiff was still in segregation, he wrote to Defendant Roy (the segregation property officer) requesting books that Plaintiff had recently ordered.  Defendant Roy told him that the books were being held in storage, and he refused to release the books based on the limitation of 25 publications including "books, magazines, Bibles, Qurans," etc., in the cell.  However, Plaintiff did not have the allotted quantity, however, Defendant Roy still refused to release the books to him (Doc. 1, pp. 11-12).

Plaintiff was interviewed on April 19, 2012, by Defendant Phelp (of Internal Affairs) in

connection with the IDR and Plaintiff's complaints about Defendant Maue (Doc. 1, p. 12). Defendant Phelp told Plaintiff, "Menard can make your life a living hell." *Id.*

Plaintiff's prison classification was changed on April 30, 2012, from "moderate security" to "high security." *Id.*

Plaintiff wrote to Defendant Godinez (Director of the Illinois Department of Corrections) on May 4, 2012, complaining about these events (Doc. 1-1, p. 13). On May 16, 2012, Defendant Withoff moved Plaintiff from North II Cell #834 to North II Cell #801, under orders from Defendant Durham.[1] Cell #834 had steel bars and was well-ventilated, but his new Cell #801 had a steel door and poor ventilation. In the hot May weather, these conditions were aggravating to Plaintiff's asthma (Doc. 1, p. 13). Plaintiff was released from segregation on May 31, 2012, and transferred to a different cell (West #303). Then on July 12, 2012, he was moved again, to West Cell #917. He quickly wrote to Defendant Niepert to inform her of his medical conditions (asthma, hypertension, and testicular problems), and requested her to "handle the matter" (Plaintiff does not describe the conditions in Cell #917 or what remedy he sought) (Doc. 1, pp. 14-15). He got no response, so he made the same request to Defendant Spiller.[2]

Plaintiff seeks an injunction ordering his immediate transfer to another prison, as well as punitive damages (Doc. 1, pp. 17-18).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims that shall receive further consideration:

Count 1: Retaliation claim against Defendants Withoff and Durham for moving Plaintiff to a cell lacking sufficient ventilation after Plaintiff complained to Defendant Godinez;

---

[1] Defendants Sgt. Withoff and Major Durham were inadvertently omitted from the docket sheet. The Clerk shall be directed to add these parties.
[2] Defendant Spiller was also inadvertently omitted from the docket sheet and shall be added.

Count 2:  Eighth Amendment unconstitutional conditions claim against Defendant Restoff for depriving Plaintiff of sufficient food for a period of at least six days;

Count 3:  First Amendment claim against Defendant Roy for denying Plaintiff access to his books, which may have included religious materials.

However, the complaint fails to state a constitutional claim upon which relief may be granted for the following claims, which shall be dismissed:

Count 4:  Retaliation claim against Defendants Maue, Mott, and Vasquez;

Count 5:  Verbal harassment and threats by Defendant Maue and Phelp;

Count 6:  Access to courts claim against Defendants Atchison, Oakley, and Godinez for mishandling and/or failing to respond to Plaintiff's grievances and complaints;

Count 7:  Claim for deprivation of a liberty interest without due process against Defendants Maue and Mott for filing a false IDR leading to Plaintiff's confinement in segregation; and

Count 8:  Eighth Amendment claim against Defendants Niepert and Spiller for failing to address Plaintiff's problems in West Cell #917.

As to Count 4, although Plaintiff alleges that the harassment he experienced from Defendants Maue, Mott, and Vasquez constituted retaliation, his factual allegations do not support such a claim.  In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  The Plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action.  *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).  The inmate need not plead facts to establish the claim beyond

doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Higgs*, 286 F.3d at 439.

In the case at bar, Plaintiff never identifies any protected activity on his part prior to Defendant Maue's actions, that could have triggered the "retaliation" by Defendant Maue. Instead, he describes being the target of harassment and punitive actions that bear no connection to any protected activity by Plaintiff. Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). This claim for retaliation rests on just such a conclusory statement. Even giving liberal construction to the complaint, s*ee Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009), Plaintiff's factual allegations are insufficient to state a retaliation claim in Count 4 against Defendants Maue, Mott, or Vasquez.

Similarly, the verbal threats, harassment, and intimidating comments by Defendants Maue and Phelp (Count 5) do not rise to the level of a constitutional violation. *See Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws").

Although Plaintiff characterizes the claim in Count 6 as a denial of access to the courts, his fundamental complaint is that Defendants Atchison, Oakley, and Godinez failed to respond or appropriately handle Plaintiff's grievances over his IDR, segregation, and related issues. While the filing or disposition of Plaintiff's grievances may be relevant in the event Defendants file a motion to dismiss or for summary judgment, the mishandling of grievances does not itself give rise to any constitutional claim, for denial of access to the courts or otherwise. An inmate

has no access to courts claim unless he can demonstrate that a non-frivolous legal claim has been

frustrated or impeded.  *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996).  Plaintiff has brought his

claim in the instant action with no apparent difficulty.  Further, the Constitution requires no

grievance procedure at all, and the failure of state prison officials to follow their own procedures

does not, of itself, violate the Constitution.  *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992);

*Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).  As such, the alleged mishandling of

grievances "by persons who otherwise did not cause or participate in the underlying conduct

states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011);  *See also Grieveson v.*

*Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir.

2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

The filing of false disciplinary charges by a correctional officer, as alleged in Count 7,

does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent

hearing on those charges in which he is afforded the procedural protections outlined in *Wolff v.*

*McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the

hearing panel, the right to call witnesses if prison security allows, and a written statement of the

reasons for the discipline imposed).  The Seventh Circuit reasoned that prisoners have a right "to

be free from arbitrary actions of prison officials," *Hanrahan v. Lane*, 747 F.2d 1137 at 1140 (7th

Cir. 1984), but determined that the procedural protections outlined in *Wolff* provided the

appropriate protection against arbitrary actions taken by a correctional officer such as issuing the

inmate a fabricated conduct violation.

In the instant complaint, Plaintiff states that he was falsely accused of violating prison

rules by Defendants Maue and Mott.  He was given a hearing on the charges, and he does not

allege any improprieties in the conduct of that proceeding.   If the finding of guilt on the false

charge came as the result of a properly conducted hearing, Plaintiff does not have a constitutional claim so long as the decision of the disciplinary hearing board was supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).  Even a meager amount of supporting evidence, such as the statement of the accusing correctional officer, is sufficient to satisfy this standard.  *See Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).  On the other hand, if Plaintiff was not afforded the procedural protections in *Wolff*, he still may not have an actionable claim.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population."  *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

The Seventh Circuit has recently elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships:  "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period."  *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original).

The first prong of this two-part analysis focuses solely on the duration of disciplinary

segregation.   For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary.  *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence").  In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

In this case, Plaintiff spent approximately 110 days (February 9 to May 31) in disciplinary segregation – a long enough period of time to require factual inquiry into the conditions of segregation (*See* Doc. 1-1, p. 31).  However, with the exception of the two weeks he spent in the poorly ventilated cell (see Count 1), Plaintiff makes no allegations that the conditions of his segregation were unusually harsh compared to the normal prison environment. *See Sandin v. Connor*, 515 U.S. 472, 486 (1995).  Therefore, the complaint fails to state a claim for deprivation of a liberty interest without due process as a result of the false disciplinary charges brought by Defendants Maue and Mott.

Additionally, no constitutional claim arises from Plaintiff's reclassification to "high security."  "[P]risoners possess neither liberty nor property in their classifications and prison assignments."  *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)).

Likewise, Plaintiff's allegations against Defendants Niepert and Spiller for failing to respond to Plaintiff's requests to address his problems in West Cell #917 (Count 8) fall short of stating a cognizable claim for a constitutional violation.  He describes his medical conditions (asthma, hypertension, and "testicular problems"), and states that he informed these Defendants

of his ailments.   However, he fails to include any facts to indicate whether, or how, the conditions in that cell affected him in any way, nor does he explain what he specifically requested Defendants Niepert and Spiller to do.   He states only that he "requested that defendant [Niepert] handle the matter informally," and that he asked Defendant Spiller to "intervene" when Defendant Niepert failed to respond (Doc. 1, p. 14).   Count 8 shall therefore be dismissed. However, Plaintiff shall have the opportunity to submit an amended complaint to present any facts which may support a constitutional claim based on the actions or inaction of Defendants Niepert and Spiller.

Finally, Defendant Morris shall be dismissed from the action with prejudice.   Plaintiff makes no allegations of wrongdoing whatsoever against her.   He mentions her only in connection with his harassment/retaliation claims against Defendant Maue, in that Defendant Morris was the person involved in the alleged four year old incident that was the subject of Defendant Maue's questioning of Plaintiff (Doc. 1, pp. 5-6).

One other matter regarding the surviving claims (Counts 1, 2, and 3) requires attention. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)).   The surviving three claims are factually unrelated to each other, and each involve different defendants:   retaliation against Defendants Withoff and Durham (Count 1), deprivation of food against Defendant Restoff (Count 2), and denial of reading material against Defendant Roy (Count 3).

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court

shall sever Counts 2 and 3 into two separate actions, and shall open a new case with a newly-assigned case number for each of these claims. Each new case will result in a new $350.00 filing fee. However, Plaintiff shall have an opportunity to voluntarily dismiss either or both newly severed cases if he does not wish to proceed on those claims or incur the additional filing fees.

**Pending Motions**

Plaintiff's motion for appointment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

The motion for status (Doc. 12) is **GRANTED** in that the status is reflected herein. The status motion inquires about Plaintiff's motion for a temporary restraining order ("TRO"), which he claims to have filed on November 13, 2012. He requests this Court to order his transfer to another prison (Doc. 12, p. 2-3). No motion for TRO was docketed. However, Plaintiff included with his complaint a document entitled "Declaration in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction" (Doc. 1-1, pp. 20-22). He also submitted a memorandum of law in support of his motion for TRO and preliminary injuction (Doc. 1-1, pp. 24-27). The declaration reiterates the allegations in the complaint, and requests a TRO ordering "defendants and their constituents" not to come within 100 feet of Plaintiff, and transferring him to another institution "to prevent further harassment and retaliation, which is likely to occur" (Doc. 1-1, p. 22).

Construing the above documents as a motion for TRO/preliminary injunction, both requests are **DENIED** at this time. A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before

the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).  Further, the United States Supreme Court has emphasized that a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)).  In considering whether to grant injunctive relief, a district court must weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence.

 Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction.  *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999).  *Accord Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872-73 (7th Cir. 2009).

In light of the Court's preliminary review of the merits of Plaintiff's claims and the dismissal herein of Counts 4, 5, 6, 7, and 8, the undersigned Judge concludes that neither a TRO nor a preliminary injunction should be issued at this time.  Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*.

Plaintiff also falls short of demonstrating that a preliminary injunction is warranted.

There is no evidence that Plaintiff has attempted to utilize alternative measures that are available to him to solve his issues. Prison regulations provide for voluntary placement of an inmate in protective custody where he will be in the presence of different correctional officers, should the need arise. ILL. ADMIN. CODE tit. 20, § 501.310 (1987). This provides an adequate remedy should Plaintiff be threatened by Defendants. Additionally, federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

**Disposition**

The Clerk is **DIRECTED** to add **SGT. WITHOFF, MAJOR DURHAM,** and **BETSY SPILLER** as Defendants in this action.

**COUNTS 4, 5, 6, and 7** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **MAUE, VASQUEZ, MOTT, PHELP, OAKLEY, ATCHISON, GODINEZ,** and **MORRIS** are **DISMISSED** from this action with prejudice.

**COUNT 8** and **DEFENDANTS NIEPERT AND SPILLER** are **DISMISSED** without prejudice to Plaintiff restating this claim in an amended complaint, as instructed below.

**IT IS HEREBY ORDERED** that Plaintiff's claims in **COUNTS 2 and 3**, which are unrelated to the claims in Count 1, are **SEVERED** into two new cases. The new cases shall be:

1) Eighth Amendment unconstitutional conditions claim against **DEFENDANT RESTOFF** for deprivation of sufficient food for a period of at least six days (Count 2 herein); and

2) First Amendment claim against **DEFENDANT ROY** for denial of Plaintiff's access to his reading material (Count 3 herein).

The new cases **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings. In each of the new cases, the Clerk is **DIRECTED** to file the following documents:

(1)     This Memorandum and Order;
(2)     The Original Complaint (Doc. 1) and exhibits;
(3)     Plaintiff's motion to proceed *in forma pauperis* (Doc. 2).

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with one or both of the newly-opened cases, he must notify the Court in writing within 35 days (on or before March 15, 2013), specifying which case(s) he wishes to voluntarily dismiss.  Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened actions, he **will be responsible for an additional filing fee** of $350 in each new case.  Service shall not be ordered on any Defendants in the severed cases until after the deadline for Plaintiff's response.

   **IT IS FURTHER ORDERED** that the ***only claim remaining in this action is COUNT 1 against Defendants Withoff and Durham***, for retaliation.  This case shall now be captioned as:

**MICHAEL FIELDS, Plaintiff, vs. SGT. WITHOFF and MAJOR DURHAM,  Defendants.**

   **IT IS FURTHER ORDERED** that Defendants **RESTOFF and ROY** are **TERMINATED** from ***this*** action with prejudice.

Should Plaintiff wish to proceed on his claim in **COUNT 8** against Defendants Niepert and Spiller, he shall file his First Amended Complaint in this action, stating any facts which may exist to support this claim, within 35 days of the entry of this order (on or before March 15, 2013).  The amended complaint must include the allegations designated herein as Count 1, but shall not include any of the claims severed in Counts 2 and 3, or those dismissed in Counts 4, 5, 6, and 7 above.  The amended complaint will be subject to review pursuant to 28 U.S.C. § 1915A.  In the event that the claims in Count 8 are not sufficiently related to the claims in Count 1, Count 8 may also be subject to severance into a new action.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1

(7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint.  Thus, the First Amended Complaint must stand on its own, without reference to any prior pleading.  Should the First Amended Complaint not conform to the requirements herein, it shall be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.  Failure to file an amended complaint shall result in the dismissal of Count 8 becoming a dismissal with prejudice.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

The Clerk of Court shall prepare for Defendants **WITHOFF** and **DURHAM**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for appointment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      DATED: February 8, 2013

s/_____
G. PATRICK MURPHY
United States District Judge