IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL FIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-1170-NJR-DGW |
| ) | |
| JERRY WITHOFF and JOSEPH DURHAM, ) | |
| ) | |
| Defendants. ) | |

## ORDER

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the Motion for Expert Discovery filed by Plaintiff, Michael Fields, on May 15, 2015 (Doc. 87). For the reasons set forth below, the Motion is **DENIED**.

### BACKGROUND

On May 7, 2015, a hearing was held on various discovery disputes between the parties. As indicated in an Order entered after the hearing (Doc. 86), Plaintiff is proceeding on one count of retaliation against Defendants Withoff and Durham whom Plaintiff alleges placed him in a cell lacking sufficient ventilation in retaliation for Plaintiff's written complaint to the Warden about disciplinary infractions and changes in classification level. Plaintiff claims that the cell, which had a steel door, was not sufficiently ventilated and aggravated his asthma. After the discovery issues were resolved, Plaintiff was given leave to file the motion currently pending before the Court, seeking approval of expert testimony: a pulmonologist and an expert on prison operations (Doc. 87). Defendants filed a response on May 22, 2015 (Doc. 88).

Plaintiff asserts that an expert in prison procedures/operations ("prison expert") is necessary because a jury lacks knowledge of prison conditions, policies, and procedures and that

such information is not within the ordinary understanding or familiarity of a layperson. Plaintiff argues that a prison expert is necessary in this particular case because neither Defendant remembers nor can offer any information (nor is there documentary evidence) as to why Plaintiff was transferred to the offending cell. Plaintiff further asserts that a medical expert is necessary to explain the severity and effect of placing an asthmatic person in a poorly ventilated cell in the warm month of May. In sum, Plaintiff argues that the effect of his surroundings on his medical condition is not within the ordinary understanding of a lay jury.

## DISCUSSION

Plaintiff's Motion does not specifically invoke Federal Rule of Evidence ("FRE") 706, which permits the Court to appoint an expert and apportion costs between the parties. The appointment of a medical expert pursuant to FRE 706 may be necessary to "help sort through conflicting evidence . . . , but [the court] need not appoint an expert for a party's own benefit or to explain symptoms that can be understood by a layperson." *Turner v. Cox*, Fed.Appx. 463, 468 (7th Cir. 2014), citing *Ledford v. Sullivan*, 105 F.3d 354 (7th Cir. 1997). If Plaintiff were seeking appointment of an expert, this Court would find that it is unnecessary. Fact witnesses can provide sufficient detail for a jury to understand relevant prison procedures, practices, operations, conditions, and layouts. Plaintiff or his doctor could also readily provide testimony as to his medical condition and what effect, in fact, the objectionable cell had on his condition. There is no indication in the Motion that an expert is required to explain conflicting evidence. Finally, the Court is unaware of any Seventh Circuit opinion that would mandate the appointment of counsel in a retaliation case, even when the issue of Plaintiff's health condition goes to an element of the claim.

Without reference to FRE 706, Plaintiff's motion simply argues the necessity of an expert

both to explain prison conditions and Plaintiff's medical condition. FRE 702 provides that an expert witness may testify if the expert's knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." The Rule goes on to provide that the expert's opinions must have sufficient reliability. At this stage of the proceedings, however, without additional information on who the experts would be, what their qualifications consist of, or what methodology they have employed, the Court is unable to perform its full gatekeeping obligation pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Thus, the only question before the Court is whether the testimony is relevant and helpful to a jury pursuant to FRE 702(a), 401, and 403.

The court finds that expert evidence regarding prison procedures and policies (especially during inmate transfers) and evidence regarding Plaintiff's asthma would not be helpful to a jury and would be a waste of time and lead to undue delay. As to a medical expert, a jury could understand that enclosing a person in a jail cell, which has three concrete walls, a steel door with the only opening being a locked chuck hole, without adequate ventilation could contribute to asthma related distress (i.e. trouble breathing). An expert is not required to provide an opinion about such a basic and common medical condition and the effects thereof. "In federal court, no expert testimony is needed when the symptoms exhibited by the plaintiff are not beyond a layperson's grasp." *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004); *See also United States v. Hudson*, 884 F.2d 1016, 1024 (7th Cir. 1989) (finding that expert testimony is properly excludable if it "will not aid the jury because it addresses an issue of which the jury already generally is aware and it will not contribute to their understanding of the particular dispute"); *but see United States v. Hall*, 93 F.3d 1337, 1344 (7th Cir. 1996) ("the district court is not compelled to exclude all expert testimony that may in some way overlap with matters within the jury's experience"). A jury

could certainly understand the relationship between the breathing constrictions caused by asthma and the exacerbation of the condition caused by stifling cell conditions. Such expert testimony would simply be cumulative of Plaintiff's own testimony regarding the effects of being placed in the objectionable cell.

As to a prison expert, expert testimony about general prison operations and conditions is both unnecessary and unhelpful. A lay person could sufficiently understand the nature of the objectionable cell, with a steel door restricting air movement on a warm May day. "Jurors do not leave their knowledge of the world behind when they enter a courtroom and they do not need to have the obvious spelled out in painstaking detail." *Dawson v. Delaware*, 503 U.S. 159, 172 (1992). A jury can certainly understand that a jail cell with no air vents, air outlets, air conditioning, or air movement, which only has a chuck hole that cannot be opened by an inmate, during a warm May day would lead to stifling living conditions. As to more general testimony regarding prison conditions, cell transfer policies, and operations, such testimony is irrelevant to the question of retaliation. As Defendants point out, the relevant inquiry is not what should have occurred during a cell transfer, but rather, in the particular circumstances of this case, whether Plaintiff was moved in retaliation for his complaints. An expert could only opine as to the steps that should have been taken or could have been taken during Plaintiff's cell transfer. However, as Defendants point out, Plaintiff, Plaintiff's fact witnesses, Defendants, and/or Brett Meyerhoff, a placement officer at Menard Correctional Center, would be able to tell a jury what should happen during a cell transfer. These witnesses also could speak to prison conditions and conditions in the cell in question. The sole question before a jury is whether Plaintiff was retaliated against for speaking out about the conditions of his confinement. A dissertation by an expert about the general prison conditions and policies at Menard is not necessary nor could an expert possibly fill

in the specific factual gaps that Plaintiff points out in his brief.

The Court is also mindful that Plaintiff filed a Motion for Summary Judgment in this matter and has essentially conceded that an expert is not necessary for him to prevail on his claims. Given the cost associated with expert reports, deposing two experts, naming counter-experts (and deposing them), in addition to the costs of experts testifying at trial, the relative value of expert testimony is diminished. While Plaintiff is alleging violations of his constitutional rights, an important and worthwhile endeavor, the recovery in this matter, if any, will be de minimis and would not outweigh the burden, expense, and time necessary to accommodate expert testimony.

## CONCLUSION

For the foregoing reasons, the Motion for Expert Discovery filed by Plaintiff, Michael Fields, on May 15, 2015 is **DENIED** (Doc. 87).

**IT IS SO ORDERED.**

**DATED:**

**DONALD G. WILKERSON**
**United States Magistrate Judge**